UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL PONCE,<br><br>              Plaintiff,<br><br>       v.<br><br>JEFFREY WANG, et al.,<br><br>              Defendants. | 1:15-cv-00620-EPG (PC)<br><br>ORDER DISMISSING CASE, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM<br><br>(ECF NO. 28.)<br><br>ORDER THAT DISMISSAL IS SUBJECT TO 28 U.S.C. § 1915(g)<br><br>ORDER FOR CLERK TO CLOSE CASE |

### I.     BACKGROUND

Plaintiff Raul Ponce ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on April 21, 2015 (ECF No. 1). The Court screened Plaintiff's Complaint and found that it failed to state a claim, in an order dated June 24, 2016. (ECF No. 17). After several extensions of time (ECF Nos. 18, 19, 20, 24, 25, 26, 27), Plaintiff filed a First Amended Complaint (ECF No. 28) on January 17, 2017, which was filed after the last deadline set by the Court. Plaintiff's First Amended Complaint is now before this Court for screening.

On May 11, 2015, Plaintiff consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c) (ECF No. 8), and no other parties have made an appearance.

Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required.  Local Rule Appendix A(k)(3).

## II.   LEGAL STANDARDS FOR SCREENING

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

## III.   PLAINTIFF'S ALLEGATIONS IN HIS FIRST AMENDED COMPLAINT

Plaintiff is an inmate at Kern Valley State Prison ("KVSP").  Plaintiff alleges that "the state" failed to timely diagnose, refer, and treat Plaintiff's spinal stenosis, and prescribed inappropriate medications, all of which deviated from the standard of care and caused Plaintiff permanent injuries.

Plaintiff "was shot 4x in the back & rib" on January 12, 2009, while he was incarcerated at R.J. Donovan State Prison. Plaintiff sustained a severe back injury from that incident. Although that incident is not at issue in this complaint, Plaintiff alleges that it required pain medication and treatment.

During the three month period of January through April 2009, Plaintiff complained to Defendants Doctor M. Martinez, R.N. Sanchez, and R.N./L.V.N. Dela Guerra of excruciating pain in his back. Defendants insisted there was nothing wrong with Plaintiff or that the pain would get better on its own. Two or three times during this period, Plaintiff had to request a "man-down" medical emergency because the pain became disabling. Once when Plaintiff consulted Defendant Guerra, Defendant Guerra instructed Plaintiff to get on the examination table on his own, causing more excruciating pain. Although correctional officers assisted Plaintiff in getting on and off the table, they carelessly threw Plaintiff on the table and caused him additional pain. Defendant Guerra conducted a physical examination and said that she could not visually see anything wrong with Plaintiff's back. However Defendant Guerra observed Plaintiff sweating excessively and said she would call the Doctor. She did so and the doctor ordered an x-ray of Plaintiff's back.

Around May 16, 2009, Plaintiff was seen by Dr. M. Martinez. Dr. Martinez told Plaintiff that the x-ray revealed Plaintiff's L5-S1 disc was 5mm off from his spine, which accounted for Plaintiff's symptoms. Dr. Martinez prescribed Neurontin and physical therapy.

Around August 22, 2009, Plaintiff was recommended an MRI. However, Plaintiff was transferred to Salinas Valley State Prison on May 6, 2010. While there, Plaintiff was prescribed Methadone and Neurontin and was also on a medical hold to receive an MRI.

On June 6, 2010, Plaintiff was in North Kern State Prison for a layover for a few days. While there, Plaintiff was denied his pain medication. Plaintiff suffered withdrawal and severe back pain.

On June 9, 2010, Plaintiff was transferred to Pelican Bay State Prison, where Plaintiff was seen by Dr. Adam. Plaintiff told Dr. Adam about the medical hold for the MRI, and Dr. Adam said she was going to look into it.

Around July 19, 2010, Dr. Adam started to "detox" Plaintiff from three times per day to two times per day.  Around August 20, 2010, Plaintiff was discontinued from all pain medications.

Plaintiff continued to complain about severe back pain and weakness/numbness in his legs.  Around June 28, 2011, Plaintiff was sent to an outside Optometrist for suspected glaucoma in the eyes.  During that visit, Plaintiff fell hard on his right shoulder, face, and back.  His whole body was in pain.

Plaintiff continued to complain about severe back pain, numbness, spasms, burning, and weakness in his legs and right shoulder due to the fall.  Dr. L. Thomas told Plaintiff to "man up," and said "if [you] think you are in pain now.  Yo[u] you don't know what pain is untill [sic] you hit your 40's."

On September 6, 2011, Plaintiff could not walk or feel his legs and was in excruciating pain.  Plaintiff was transferred to a medical facility at Corcoran State Prison on September 16, 2011.

On October 5, 2011, Plaintiff consulted with Defendant Dr. Jong Moon.  Plaintiff told Defendant Moon about the referral for an MRI and how Plaintiff was in excruciating back pain, which was getting worse.

Around October through November 30, 2011, Plaintiff continued to complain to Defendant Moon about his shoulder and back pain.  Defendant Moon told Plaintiff he was tired of hearing it and said "You just got to live with it.  I am going to give you the MRI."

On November 28, 2011, Plaintiff finally got an MRI.  This happened almost three years after the initial onset of pain.

On April 11, 2012, Plaintiff was seen by Defendant Dr. Wayne Ulite regarding the MRI results.  The MRI showed minimal degenerative changes as mentioned above at L4-5/L5-S1, and that at the L5-S1 level there was a central and left sided disc extrusion with slight narrowing of the thecal sac.  Defendant Wayne Ulite prescribed some pain medical and a chrono for an extra mattress so Plaintiff could sleep better at night.

On December 28, 2012, Plaintiff was moved to 4B-yard.  Plaintiff was seen by Dr.

Nguyen and complained of severe back pain and weakness/numbness in the lower back that radiated down the left leg. Dr. Nguyen prescribed Neurontin.

On July 3, 2013, Plaintiff's legs gave out and he fell hitting the toilet. Plaintiff was in severe excruciating pain. Plaintiff's back was locked. Nurses came and put Plaintiff on a stretcher and took his vitals. Plaintiff was taken to the hospital. Plaintiff was seen by Defendant Moon. Plaintiff had soiled himself and was embarrassed because he thought the medical staff was laughing at him. The nurses did not clean him, which they were told to do by Defendant Moon. Plaintiff was not cleaned until the next day at the Corcoran hospital.

Plaintiff was seen by Defendant Moon two days later. Defendant Moon ordered an x-ray. The x-ray revealed herniated discs. Plaintiff was kept at the hospital for a month and a half. During the stay, Plaintiff fell three times, hurting his back, shoulder and head. Plaintiff went on a hunger strike.

Plaintiff had a horrible time in the hospital because the nurses would mess with him. They did not provide room service. They did not give Plaintiff new clothes to wear. They would not change the sheets. One nurse would knock on the door to wake Plaintiff up and then run away from the door. Plaintiff would tell on the nurses to the doctors. Plaintiff began filing grievances against the nurse(s).

On July 22, 2013, Defendant Moon told Plaintiff there was nothing else Defendant Moon could do and that Plaintiff was lucky he was still on his pain medication. Defendant Moon said if it were up to him, he would cut Plaintiff off the pain medication. Plaintiff was not ready to go back to his cell because he was still in excruciating pain and could not perform his daily activities.

On February 18, 2014, Plaintiff was seen by Defendant Ulit.[1] Plaintiff complained of excruciating pain, an inability to walk long distances, and weakness/numbness in his legs. Defendant Ulit told Plaintiff that "you need to stop faking it and you need to man up. You will get better soon."

---

[1] It is unclear whether the proper spelling is "Ulit" or "Ulite."

On March 14, 2014, Plaintiff filled out a sick call slip. On March 17, 2014, Plaintiff was seen for the sick call slip, and was told that he could see the doctor in 14 days.

On March 19, 2014, Plaintiff put in a sick call slip because his pain medication, Gabapentin, was discontinued by Defendant Wang.

On March 21, 2014, Plaintiff saw Nurse Holt, who consulted with Defendant Ulit. Plaintiff was told there was nothing Defendant Ulit could do because Defendant Wang was the boss and ordered the pain committee to cut Plaintiff off. Plaintiff was left to deal with his severe pain.

On March 28, 2014, Plaintiff was called into the clinic to consult with Defendant Ulit. Plaintiff had to wait for hours. Plaintiff was eventually told he would be seen by another doctor. Finally, Plaintiff was seen by Defendant Dr. Ravijot Gill. Plaintiff told Dr. Gill that he was in severe pain and asked to have his pain medication renewed. Plaintiff explained that Defendant Ulit was supposed to ask the pain committee if they could renew Plaintiff's medication or if Plaintiff could be prescribed morphine. Defendant Gill said "I'm not going to give you morphine nor renew medication. I don't know why I am seeing you." Plaintiff explained that he was suffering from excruciating pain, and that he had been waiting all day to see a doctor. Defendant Dr. Gill told Plaintiff that he would have Plaintiff seen by his yard doctor in four to five days. Plaintiff had not eaten lunch or dinner nor taken any of his pain medication. Plaintiff said "to top it off by you guys keeping Plaintiff in a cell all day defendants had made my pain get even worse." Defendant Gill sent Plaintiff back to his cell without any additional pain medication prescriptions.

On April 7, 2014, Plaintiff filled out a sick call slip, but Plaintiff was denied care because he had failed to remove paper that covered his window. Plaintiff removed everything from the window when the medical escort told him to, but was still denied care. Plaintiff even called man-down but was denied access to a doctor.

Plaintiff filled out another sick call slip on June 2, 2014, stating that his back pain is getting worse, he can't sleep, and he is constantly tired and sleepy.

Plaintiff woke on June 19, 2014, with severe back pain. Plaintiff could not get out of bed. Plaintiff finally did get out of because he had to brush his teeth and use the restroom. Plaintiff felt a stabbing pain and filled out a sick call slip. Plaintiff was seen by Nurse Holt on June 23, 2014.

Plaintiff was seen by Defendant Gill on June 27, 2014. Plaintiff continued to have excruciating pain. Defendant Gill told Plaintiff that there was nothing wrong with him and that all Plaintiff wants is his pain medication back. He said Plaintiff was faking it. He said that we (Defendants) do not care if you keep going man-down, you are not getting your pain medication back. Plaintiff stated that his pain was too much to take and that he was going to 602 Defendant Gill.

Plaintiff put in a number of sick call skips to see Defendant Ulit. Plaintiff stated that he had back pain, that his head hurt, and that his right ear hurt. Plaintiff was seen on September 24, 2014.

On January 8, 2015, Plaintiff got another MRI because he could not get out of bed. The MRI showed chronic back pain with left sciatica and multilevel disc herniation with spinal stenosis.

On September 22, 2015, Plaintiff was transferred to KVSP. Plaintiff was seen by Defendant Dr. A. Manasrah. Defendant Manasrah told Plaintiff that his supervisors told him to discontinue Plaintiff's Neurontin.

On January 24, 2016, Plaintiff woke up in the morning and could not move. Plaintiff told the nurse at pill call that he was in extreme pain and could not get out of bed. The nurse told Plaintiff that she would give him an extra dose of pain medication, and that if he was still in pain to let the C/O's know and she would call the doctor. Plaintiff told the nurse that he needed medical attention immediately. A few hours later Plaintiff went man-down because he could not take the back pain anymore. Plaintiff was taken to the clinic. The nurse told Plaintiff that Defendant Manasrah knew his situation and knew that Plaintiff was a faker. Plaintiff was sent back to his cell without receiving any treatment or medication.

\\\

## IV. COURT'S PRIOR SCREENING ORDER

The Court issued a screening order regarding Plaintiff's initial complaint on June 24, 2016. (ECF No. 17). The Court found that Plaintiff failed to state a claim for a violation of the Eighth Amendment's cruel and unusual punishment clause because he failed to establish the elements for deliberate indifference to serious medical needs, rather than a difference in medical opinion regarding whether Plaintiff needs the pain medication. The Court set forth the legal standards for such a claim and provided leave to amend.

## V. DELIBERATE INDIFFERENCE

### a. Legal Standards

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the

facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837. "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)). Additionally, a difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi, 391 F.3d at 1058.

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of...subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no *respondeat superior* liability under [§] 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Iqbal, 556 U.S. at 676; Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).

### b. Analysis of Plaintiff's Allegations

The Court finds that Plaintiff has not stated a claim for deliberate indifference to his serious medical needs. Plaintiff describes a serious of injuries, beginning with being shot multiple times and then suffering from several falls. None of these are attributed to Defendants' conduct. Plaintiff's pain appears due to those injuries. Plaintiff's First Amended Complaint is centered on his contention that he is entitled to more serious pain medication for the pain he suffers as a result of these various injuries.

Plaintiff's complaint indeed shows a stark difference of opinion regarding Plaintiff's need for certain pain medications. Plaintiff has been seen by many doctors and medical

professionals over time. He has received extensive treatment including over a month in the hospital, x-rays, and two MRIs (although with substantial delay from when the MRI was first suggested). Plaintiff also received substantial pain medication at times close to the injuries, such as after one of the severe falls. However, it appears that a pain committee eventually decided that Plaintiff no longer needed the pain medication. Plaintiff vehemently disagrees with their conclusion and wants his prior pain medication reinstated.

What Plaintiff alleges does not state a violation of the United States Constitution. Plaintiff has potentially alleged malpractice. But this falls short of cruel and unusual punishment that violates the Eighth Amendment. The facts alleged establish that Plaintiff's medical team has a medical conclusion that Plaintiff does not need certain pain medications. These facts do not establish deliberate indifference to serious medical needs as explained above. There is no indication that any of Defendants knew that Plaintiff needed medical care but purposefully refused to give it.

The Court sympathizes with Plaintiff's repeated injuries and ongoing pain. However, the Court finds that even if these facts are true, no Defendants would be in violation of the Constitution.

### VI. CONCLUSION AND ORDER

The Court finds that Plaintiff's First Amended Complaint (ECF No. 28) fails to state any cognizable claims upon which relief may be granted under § 1983. The Court previously granted Plaintiff leave to amend the complaint, with ample guidance provided by the Court. Plaintiff has now filed two complaints without stating any claims upon which relief may be granted under § 1983. The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Accordingly, IT IS HEREBY ORDERED that:

1. Pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e), this action is DISMISSED, with prejudice, based on Plaintiff's failure to state a claim upon which relief may be granted under § 1983;

2. This dismissal is subject to the "three-strikes" provision set forth in 28 U.S.C. § 1915(g).  <u>Coleman v. Tollefson</u>, 135 S. Ct. 1759, 1763 (2015); and

3. The Clerk is directed to close this case.

IT IS SO ORDERED.

Dated: __**February 1, 2017**__                    /s/ *Erica P. Grosjean*
                                                            UNITED STATES MAGISTRATE JUDGE